```
               UNITED STATES DISTRICT COURT
                         FOR THE
                   DISTRICT OF VERMONT

DAVID GRIFFIN,                    :
                                  :
          Plaintiff,              :
                                  :
v.                                :   Case No. 2:21-cv-134
                                  :
JOHNSON & JOHNSON, JOHNSON &      :
JOHNSON CONSUMER, INC., JOHNSON & :
JOHNSON HEALTH CARE SYSTEMS, INC.,:
ETHICON, INC., ETHICON ENDO-      :
SURGERY, INC., ETHICON ENDO-      :
SURGERY, LLC, and ETHICON US, LLC,:
                                  :
          Defendant.              :
```

## OPINION AND ORDER

### I.   Introduction

Plaintiff David Griffin has sued various Defendants, medical device developers and manufacturers, for injuries resulting from a defective stapler. After a lengthy discovery process, Plaintiff filed a motion to compel (ECF No. 76) alleging various deficiencies in Defendants' discovery responses including inadequate custodial disclosure and failure to produce documents in native electronic format in accordance with the agreed-upon provisions governing ESI production. For the following reasons, Plaintiff's motion is granted in part and denied in part.

## II.  Background

Plaintiff Griffin filed this lawsuit against various corporate entities ("Defendants") for damages "resulting from the promotion, sale, manufacture, and distribution of an unreasonably dangerous and defective medical device product known generally as the Endoscopic Curved Intraluminal Stapler." ECF No. 1 at 1. Griffin claims that there was a defect in such staplers produced between March of 2018 and March of 2019, *id.* at 4, and that one of those defective staplers caused him "severe injuries and damages" during a "laparoscopic assisted sigmoid colectomy." *See id.* at 32-37.

Two cases presenting similar issues are pending in Kentucky state and federal court. ECF No. 29 at 1; *Smith v. Johnson & Johnson*, Case No. 3:20-cv-00295-DJH (W.D. Ky.); *Tongate v. Ethicon, Inc.*, Case No. 21-CI-00970 (Jefferson County Circuit Court). The parties conducted discovery in all three cases "geared towards a successful mediation." ECF No. 49 at 1. The pre-mediation discovery in this case was limited to plaintiff-specific facts because liability issues were expected to be common to all three cases. ECF No. 52 at 2; ECF No. 49 at 3.

Mediation was unsuccessful. ECF No. 49 at 3. The parties were then unable to agree on a discovery schedule. ECF No. 52 at 1. However, they resolved their differences and submitted a stipulated discovery schedule on June 16, 2023. ECF No. 62. In

that filing, the parties agreed that "plaintiff may serve written discovery substantially similar to the second set of written discovery previously served in the *Tongate* matter," and that "defendants will serve responses by August 31, 2023." *Id.* at 1. They also agreed to a protective order, ECF No. 63, which this Court signed, and stated that "by September 30, 2023, the parties shall file a Status Report with the Court regarding remaining issues." ECF No. 62 at 1.

Plaintiff served discovery requests on Defendants on July 11, 2023. ECF No. 68. That request was "124 pages long, with 12 pages of definitions, four pages of instructions, 125 interrogatories including subparts, 315 document production requests including subparts, 129 footnotes with numerous regulatory references and internet links, and four exhibits." ECF No. 71 at 1. However, it was also "identical to the set that had been previously served in [*Tongate*]." *Id.* Defendants missed the August 31 deadline but served responses in *Tongate* on September 8, and later notified Plaintiff's counsel that responses in this case would be "identical" except for "federal instead of state references" and "four different exhibits." *Id.* at 1. Plaintiff characterized the *Tongate* production as deficient. ECF No. 70 at 2.

The parties held a meet-and-confer on October 18, 2023. That was apparently unproductive. ECF No. 75 at 14-15. This

Court held a status conference on these discovery issues on October 30, 2023. ECF No. 74. In that hearing, Plaintiff specifically complained that Defendants had not adequately identified custodians for the various requested documents, or appropriate data sources. ECF No. 75 at 9. Plaintiff also stated that Defendants produced discovery responses in PDF format "when clearly that's not how it resides in their system," *id.* at 11, and that Defendants had stamped "confidential" and "revised" across the produced PDFs. *Id.* They then objected that Defendants did not produce a load file, *id.* at 13, and that document production in the three different cases came with different numbering systems. *Id.* at 16.

At the status conference, Plaintiff's counsel represented that she would file a motion to compel discovery disclosure and responses to resolve the enumerated alleged deficiencies. *Id.* at 14. That motion (ECF No. 76) is now ripe. It enumerates several deficiencies with Defendants' document production and seeks to compel compliance with Plaintiff's July 11 discovery request. The Court will address each issue in turn.

### III. Discussion

The Federal Rules of Civil Procedure establish the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to the party's claim or defense and proportional to the needs of the case, considering the

4

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "A district court has wide latitude to determine the scope of discovery." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008). A court may limit discovery for a number of reasons, including if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C).[1]

**a. Custodians**

Plaintiff argues that Defendants unreasonably shielded document custodians from discovery. ECF No. 76-1 at 8. He asks Defendants to identify *all* personnel who "participated or investigated in any way Plaintiffs' complaint files," ECF No. 76-2 at 8, "participated in, drafted or approved [standard

---

[1] As a threshold matter, Plaintiff asserts that Defendants have not verified their interrogatory responses pursuant to Fed. R. Civ. P. 33. ECF No. 90 at 2. Defendants should promptly verify their discovery in order to come into compliance with the rule.

operating procedures for device complaint management],” ECF No.
76-2 at 14, and requests that Defendants broadly identify
additional document custodians on a range of issues relating to
Defendants' business and stapler products.[2] Plaintiff's eighteen
interrogatories each seek disclosure of a different category of
document custodians.

Several courts have concluded that parties seeking searches
of additional custodians beyond those initially disclosed “must
demonstrate that the additional requested custodians would
provide *unique* relevant information by providing evidence that
there are unique responsive documents being missed in the
current search scheme that would justify the inclusion of
additional custodians.” *Coventry Cap. US LLC v. EEA Life
Settlements Inc.*, No. 17CIV7417VMSLC, 2020 WL 7383940, at *6
(S.D.N.Y. Dec. 16, 2020), objections overruled, No. 17 CIV. 7417
(VM), 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021) (cleaned up)
(quoting *Blackrock Allocation Target Shares: Series S Portfolio
v. Bank of N.Y. Mellon*, No. 14 Civ. 9372 (HBP), 2018 WL 2215510,
at *9 (S.D.N.Y. May 15, 2018)); *see also Assured Guar. Mun.
Corp. v. UBS Real Est. Sec. Inc.*, No. 12 CIV. 1579 HB JCF, 2013

---

[2] Plaintiffs also state that Defendants did not make adequate
initial disclosures pursuant to Federal Rule of Civil Procedure
26(a)(1)(A). ECF No. 76-1 at 8. That issue has not been
adequately briefed beyond this cursory assertion, and the Court
will not address it.

WL 1195545, at *4 (S.D.N.Y. Mar. 25, 2013) (denying motion to compel when moving party failed "to demonstrate that the remaining proposed custodians possess relevant documents that are not also within the custody of the three named custodians."). Conversely, courts grant motions to compel disclosure of additional custodians when moving parties can show that "they will have additional, highly relevant materials" that were not previously shared. *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 269 F.R.D. 609, 620 (S.D.W. Va. 2010). However, courts generally require some allegations to support the notion that additional custodians will have relevant and undisclosed information. *Id.* at 617 (drawing its conclusion based on "extensive exhibits").

Plaintiff is certainly entitled to ESI custodians capable of testifying to the authenticity and significance of relevant documents. Fed. R. Civ. Pro. 26(b).[3] However, he is not entitled to discovery of every individual adjacent to a possible issue in the case.[4] The scope of Plaintiff's available discovery is

---

[3] Defendants' counsel's assertion that "[t]here is no provision in the rules requiring identification of document custodians" is incorrect. ECF No. 76-1 at 8 (citing ECF No. 76-6 at 2). The Advisory Committee's Note to the 2015 amendment to Rule 26 explains that "[d]iscovery of [document custodians, among other things] is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples." Fed. R. Civ. P. 26 Adv. Comm. Note (2015).
[4] Plaintiffs' reply declaration asserts that "custodial disclosures are made to identify who has potentially responsive

limited by Rule 26(b)(1), which provides that discovery is circumscribed by its proportionality "to the needs of the case" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." The Court concludes that Defendants' interrogatory responses disclosing custodians were generally (and preliminarily) adequate with a few exceptions.

Interrogatory number one requests that Defendants identify all personnel who participated in the investigation of Plaintiff's complaint files and the sale of the staplers to Plaintiff's hospitals. ECF No. 76-3 at 8. Defendants objected to that request as irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and disproportionate to the needs of the case.[5] *Id.* at 7. The Court concludes that this request is relevant and proportional to the needs of the case. All of Plaintiff Griffin's claims relate to his injury stemming from the sale of the allegedly defective stapler to the hospital, and this request goes directly to the disclosure of

_____

information." ECF No. 90-2 at 6. This may be true, but the breadth of Plaintiff's interrogatories counsel against such blanket disclosure. Plaintiffs may depose these disclosed custodians and learn of additional custodians more directly relevant to the case.

[5] Defendants made similar objections to each of Plaintiff's interrogatories. These other objections have not been briefed with adequate detail for the Court to evaluate them. Additionally, because the Court concludes that disclosure of one custodian per interrogatory is adequate, Defendants have still substantially complied with Plaintiff's discovery requests notwithstanding those objections.

individuals with personal knowledge of the Defendants'
involvement (or lack thereof) with the relevant hospital and
with Griffin's complaint. Disclosure of custodians related to
the sale of the stapler is plainly relevant and substantially
important to Counts III, IV, and V (fraudulent
misrepresentation, failure to warn, and fraud by concealment)
because all three turn on representations made in the marketing
and sale processes. While it may be burdensome for Defendants to
identify all individuals involved in selling the stapler to the
hospital and assessing Plaintiff's complaint, those individuals
could be in possession of information well worth the burden of
production. Accordingly, Plaintiff's motion to compel disclosure
of additional custodians is granted as to interrogatory number
one.

Interrogatories numbers two through eighteen deal with less
particularized requests.[6] Plaintiff essentially requests that

---

[6] Interrogatory number two deals with Defendants' standard
complaint response policies, ECF No. 76-3 at 14, three with
complaint trend reports, *id.* at 16, four with a shift in staple
manufacturing protocol, *id.* at 18, five with FDA communications,
*id.* at 24, six with reportability decisions, *id.* at 25, seven
with recall logistics, *id.* at 28, eight with premarket
notifications related to design changes, *id.* at 22, nine with
all complaints related to the stapler, *id.* at 33, ten with what
appears to be a specific piece of manufacturing equipment, *id.*
at 45, eleven with nonconformance reports, *id.* at 53, twelve
with specific testing plans, *id.* at 60, thirteen with corrective
action plans, *id.* at 63, fourteen with product designs, *id.* at
69, fifteen with specific manufacturing documents, *id.* at 70,
sixteen with Defendants' corporate structure, *id.* at 72-76,

Defendants disclose all custodians with any knowledge of any of Defendants' business functions related to the allegedly defective stapler. While this information may be relevant, requesting the name, resume, address, and cell phone number of every individual involved with Defendants' stapler business far exceeds the scope of discovery required at this stage of the litigation. As an example, interrogatory sixteen requests Defendants to "[d]escribe the organizational structure of the J&J Quality & Compliance ('J&J Q&C') organization" and "identify all persons serving key leadership roles [therein] and all persons who participated in drafting, reviewing, and/or submitting [those documents]." ECF No. 76-3 at 75 (cleaned up). Eighteen is substantially similar. Custodial disclosure of individuals with knowledge of Defendants' safety practices is proportional to Plaintiff's need in this case, but disclosure of *every individual* with knowledge of Defendants' internal safety review policies is overbroad and unnecessary. Plaintiff has not stated why disclosure of a long list of custodians would lead to unique information that cannot be provided by the other individuals disclosed by Defendants.[7] This theme plays out across Plaintiff's requests.

---

seventeen with quality control policies, *id.* at 77, and eighteen with Johnson & Johnson's corporate structure, *id.* at 85.
[7] This is not to say that Plaintiff must identify unique documents that custodians will produce, but that they must

Plaintiff takes issue with Defendants' disclosure of just five custodians across all eighteen interrogatories. ECF No. 76-1. However, Defendants have alleged that those five custodians can respond to Plaintiff's questions about the disclosed documents and related ESI, and the Court has no reason to doubt that assertion. It may be true that any of Defendants' disclosed custodians may be "one of many custodians responsive to [an] interrogatory," ECF No. 76-1 at 9, but unless Plaintiff can explain why the disclosed custodians are insufficient, the Court sees no reason why Defendants should have to list every potentially responsive individual. *Coventry*, 2020 WL 7383940, at *6 (party moving to compel "must demonstrate that the additional requested custodians would provide unique relevant information by providing evidence that there are unique responsive documents being missed in the current search scheme that would justify the inclusion of additional custodians").[8]

---

"demonstrate that discovery from these custodians would be relevant and nonduplicative." *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, No. 17 CIV. 7417 (VM), 2021 WL 961750, at *2 (S.D.N.Y. Mar. 15, 2021) (affirming magistrate judge decision).
[8] This applies specifically to Plaintiff's argument that Defendants' Exhibit 69 identified nine individuals as having participated in an FDA safety inspection, but that Defendants only disclosed two of those people as custodians. ECF No. 76-1 at 10. Plaintiff has not stated why the remaining seven individuals are likely to have additional, unique, relevant information. The fact that many of the exhibits referenced in Exhibit 69 were omitted from production, while potentially troubling, also does not provide a reason why additional custodians must be disclosed: Plaintiff has offered no reason

Defendants object to interrogatories 16b and 18 as "overbroad, irrelevant, and not proportional to the needs of the case" because they seek information on Johnson & Johnson, which Defendants allege is "not a proper party to this case." ECF No. 84 at 11 n.8. The Court finds that interrogatories 16b and 18 are relevant to the case. There is obviously a dispute as to Johnson & Johnson's involvement. ECF No. 76-1 at 10. Plaintiffs seek disclosure of ESI custodians aware of Johnson & Johnson's Chief Quality Officer for MedTech (ostensibly related to Ethicon's operations) and how the quality control office functioned in 2018, ECF No. 76-3 at 73 (interrogatory 16b), as well as custodians of ESI related to that officer's role in the stapler recall, ECF No. 76-3 at 83 (interrogatory 18d). Plaintiff's responses are material to the scope of the litigation – namely, whether Johnson & Johnson was involved in the recall. However, like the other interrogatories, Defendants need not disclose *every* individual with knowledge of ESI related to these issues. Instead, they must identify individuals capable of responding to Plaintiff's questions regarding these issues – which will also aid Plaintiffs in discovering whether there are other individuals with "unique," non-duplicative information.

---

why the two disclosed individuals will be unable to testify to those omitted exhibits.

12

Accordingly, Plaintiff's motion to compel is granted as to
interrogatories 16b and 18d.

### b. Data Sources

Plaintiff seeks to compel Defendants to disclose "where and
how such [ESI] was stored (i.e. on a network, database, or
computer)." ECF No. 76-1 at 11 (cleaned up). He states that this
information is required for Plaintiff to "identify deficiencies
with Defendants' production." *Id.* Defendants characterize this
as a request for "discovery on discovery" requiring "an adequate
factual basis" as justification. ECF No. 84 at 15 (quoting
*Freedman v. Weatherford Intern. Ltd.*, No. 12 CIV. 2121 LAK JCF,
2014 WL 3767034, at *1 (S.D.N.Y. July 25, 2014)).

Discovery on data systems is typically characterized as
collateral discovery, or "discovery on discovery." *See, e.g.*,
*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No.
13CV2581PKCJLC, 2019 WL 3334503, at *17 (S.D.N.Y. July 25,
2019). This is true unless the case contains a "disputed issue
of material fact that would be meaningfully informed by the
question of whether, for example," a particular record was kept
on one data source rather than another. *Doe v. Wesleyan Univ.*,
No. 3:19-CV-01519 (JBA), 2021 WL 4704852, at *4 (D. Conn. Oct.
8, 2021). To be sure, the scope of discovery is not strictly
limited to information that is directly relevant to a claim or
defense. *Id.*  But when discovery is intended to test the

adequacy of production, the Court must "closely scrutinize the request" in light of the dangers of indefinite discovery. *Kaye v. N.Y. City Health & Hosps. Comm'n*, No. 18-cv-12138 (JPO) (JLC), 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020).

Plaintiff has not given a reason why he needs Defendants' data sources other than to "fully identify deficiencies with Defendants' production." ECF No. 76-1 at 11. The Court further finds that Plaintiff's requests regarding data sources – which include far more than simply the name of the data source, such as "its administrators," "the purpose(s) for its use," "coding instructions and manuals over time," "legacy data conversion protocols," and "methodologies for culling the relevant and discoverable ESI," ECF No. 76-1 at 2 (cleaned up) – are substantially burdensome, and Plaintiff has not identified an adequate factual basis for requiring such discovery. Additionally, Defendants' responsive briefing identified six data sources for documents produced in this case. ECF No. 84 at 16. This is adequate for Plaintiff's purposes. If further discovery reveals obviously inadequate disclosures, Plaintiff may re-file a motion to compel discovery on discovery. *See, e.g., Haroun v. ThoughtWorks, Inc.*, No. 20-cv-100 (LJL), 2020 WL 6828490, at *2 (S.D.N.Y. Oct. 7, 2020) ("Plaintiff can inquire at deposition both about the documents that have been produced and those that have not been produced and can review the

14

document production itself for obvious gaps. If it creates such a record, it may have a basis for discovery on discovery.").

### c. Production Format

Plaintiff next objects that Defendants did not produce documents in their native electronic format as required by the stipulated discovery plan. ECF No. 49-1 at 3. Specifically, Plaintiff states that many of the produced documents were "spreadsheets, emails, database data, or other documents" converted into PDFs. He also notes that Defendants stamped "revised" across many of the produced PDFs, and do not explain how those documents were revised. ECF No. 76-1 at 12.

Defendants assert that the discovery plan entered in this case "does not specify the manner in which Ethicon was to produce documents." ECF No. 84 at 17 n.12. The document referenced by Defendants is a stipulated discovery schedule noting that discovery in this case would be "substantially similar" to discovery in the *Tongate* case (with alterations for state versus federal rules), and incorporating the *Tongate* discovery requests by reference. See ECF No. 60 at 1. The *Tongate* discovery requests do require production in native electronic format (as does Rule 34, essentially). See ECF No. 49-1 at 3 (Tongate requests for production and interrogatories specifying native format); ECF No. 76-2 at 63 (definition of "native electronic format" in this case); Fed. R. Civ. Pro. 34

15

("A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request.").

The Court agrees that Defendants must produce documents in their "native electronic format" for two reasons. First, as noted above, Plaintiff is correct that the stipulated discovery plan requires such production. ECF No. 49-1 at 3. Second, deliberately changing searchable and filterable documents into "static images" substantially impedes Plaintiff's ability to use the produced files, which could serve as a violation of Rule 37.

However, the issue is the definition of "native electronic format." Plaintiff's request for production defines "native electronic format" to mean "the format of ESI in which it was generated *or* the format used by the producing party in the usual course of its business." ECF No. 76-2 at 63 (emphasis added). While Defendants dispute whether they are obliged to provide documents in native format in the first place, ECF No. 84 at 17 n.12, they also submit that they did produce documents as they were "used by the producing party in the usual course of business" – that is, in PDF form. ECF No. 84 at 17. The Court has no way to evaluate that claim, and no reason (aside from Plaintiff's protestations) to doubt that it is true. Accordingly, while the Court agrees that Defendants must provide ESI documents in native electronic format – and agrees that

16

Defendants are obliged to do so, to the extent that they have not already – it also finds that production of documents as they are used in the ordinary course of business satisfies Defendants' obligations.

Additionally, if documents are revised for confidentiality or some otherwise legitimate reason, Defendants may submit a privilege log (as discussed below) or motion for a protective order. Otherwise, they are ordered to turn over unaltered files to Plaintiff.

### d. Communications

Plaintiff next asserts that Defendants failed to disclose communications between Defendants and the FDA as requested. ECF No. 76-1 at 14l; *see also* ECF No. 76-3 at 18 (Plaintiff's request for production for "all communications and all data (written, electronic, or oral) with FDA related to each model of the recalled staplers.") (cleaned up). Defendants concede that they did not produce all of their communications with the FDA. ECF No. 84 at 18. Instead, they submit that Plaintiff's requests are objectionable on various grounds – primarily that Plaintiff "seeks Ethicon's entire electronic database for staplers, which contains documents spanning multiple different products over 15 years." *Id.* at 20. The Court concludes that Plaintiff's motion to compel all of Defendants' communications with FDA is overbroad and unduly burdensome.

The Court first notes that Plaintiff's request is overbroad to the point of being irrelevant. Plaintiff seeks "all communications" related to "each model of the recalled staplers" from when each stapler was released to the market until the present. ECF No. 76-3 at 19. Only one stapler model is relevant to this case, and only a subset of documents specific to that model will bear on Plaintiff's products liability claim. Defendants also note that several of Plaintiff's additional requests – included in discovery request number 5, ECF No. 76-3 at 19-24 – similarly seek information related to all recalled staplers, without temporal limitation.

The burden associated with Plaintiff's unbounded discovery request is substantial. Defendants submitted a declaration from an e-Discovery professional stating that Plaintiff's request to compel production of email communications, without a date range or set of search terms, makes it impossible to estimate the precise number of documents that would be produced in response to the request. ECF No. 84-5 at 3. Her prior experience with similar cases leads her to estimate that each custodian subject to the request would possess roughly 33,000 documents requiring review, costing roughly $110,000 each.[9]

_____

[9] The Court has considered Plaintiff's reply declaration from Mark Lanterman. ECF No. 90-2. Lanterman is an expert in e-Discovery, and outlines several purported deficiencies in Defendants' responses. He also states that Defendants' expert's

18

The unlimited scope of Plaintiff's request, combined with the extreme associated burden, mandates denial of Plaintiff's motion to compel pursuant to this Court's discretion under Rule 26.

### e. Complaint Files

Plaintiff next claims that Defendants did not share all of the requested complaint files. He references one document – the Establishment Inspection Report – which states that Defendants received 148 complaints relating to the "ILS devices," and notes that Defendants did not share all 148 of those files. ECF No. 76-1 at 14. Defendants respond that they initially provided 122 complaint files related to the stapler at issue in this case, ECF No. 84 at 21, which reference similar injuries and containing certain "Patient Experience Codes" comparable to Plaintiff's.

The Court concludes that this is adequate. Defendants have conducted a search for complaint files that are relevant to this case by reference to the specific product at issue in this case and similar patient experiences. They are correct that they are not obliged to turn over complaint files that have no bearing on

---

proffer of the costs associated with Plaintiff's discovery request is "not based on the facts and data at issue in this matter." ECF No. 90-2 at 12. This may be true, but Plaintiff's expert explains that her conclusion is simply an estimate, and Defendant's expert has offered no contrary estimate.

the case. If Plaintiff can designate a particular category of files or specific search terms as directly relevant to the litigation, he may request that Defendants produce those files. But absent a more particular showing, Plaintiff's generalized motion to compel is denied.

Plaintiff also states that the produced complaints were deficient, with improper redactions. ECF No. 76-1 at 14. That issue is addressed in the Court's discussion of privilege logging, below.

**f. Sharing and Privilege Logging**

The motion to compel concludes by requesting that the Court mandate a file sharing system with the similar pending Kentucky cases. The parties essentially accuse each other of failing to cooperate over a sharing agreement. ECF No. 76-1 at 15, ECF No. 84 at 23.

Defendants note that the parties submitted proposed file sharing agreements on June 1, 2023. ECF No. 57-1, 57-2. The agreements are substantially similar, but Plaintiff's agreement adds one sentence stating that "discovery materials may be shared" in other cases "upon a proper motion being made showing that" the relevant materials will be governed by similar protective orders in the new litigation. ECF No. 57-2 at 2. It also adds a sentence clarifying that no discovery ruling in one case will be binding on another case. *Id.*

The Court orders the parties to meet and confer over which of these agreements they would like to adopt. It notes that the agreements are practically identical; even without Plaintiff's proposed addition, a future court could allow discovery sharing with this litigation upon proper motion and with an adequate protective order. It is also clearly true that "no ruling in any of the subject cases will be binding on any of the other [cases] where a similar issue may have been addressed." ECF No. 57-2 at 2. If the parties are unable to resolve their differences over these two documents, the Court will select one.

The final issue is with the provision of a "redaction/privilege log." Plaintiff notes that the parties' agreed-upon protective order stipulates to a privilege/redaction log. It specifies the basis for redactions, including several federal regulations and privileges, and states that the "redaction/privilege log shall be in the form set out in" an attached exhibit. ECF No. 63; ECF No. 63-2 (exhibit laying out parameters for a redaction log). This agreement makes clear that redactions must be justified with reference to the basis for the redaction. Accordingly, the Court grants Plaintiff's motion to compel production of a redaction/privilege log.

## IV.   Conclusion

For the foregoing reasons, Plaintiff Griffin's motion to compel discovery disclosures and responses (ECF No. 76) is

21

**granted** in part and **denied** in part. Defendants' motion for oral argument (ECF No. 92) is **denied.** Defendants' motion to strike Plaintiff's reply declarations (ECF No. 93) and their motion to file a sur-reply brief (ECF No. 94) are both denied as moot.

DATED at Burlington, in the District of Vermont, this 17th day of June, 2024.

<u>/s/ William K. Sessions III</u>
Hon. William K. Sessions III
U.S. District Court Judge